UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

KALVIN LAMAR WASHINGTON,

        Plaintiff,

v.

PAUL T. WALTON, et al.,

        Defendants.
_____/

Case No. 1:22-cv-678

Honorable Phillip J. Green

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this matter by filing a complaint against Defendants Paul T. Walton and Trinidad Paredes in the United States District Court for the Eastern District of Michigan. (ECF No. 1.) That court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.) Plaintiff subsequently filed a supplement to his complaint, purporting to add Robert L. Stratton, III, a prosecutor in Chippewa County, as a defendant. (ECF No. 6.) In an opinion and order, and judgment (ECF Nos. 8, 9) filed on July 27, 2022, the Eastern District of Michigan dismissed Walton as a Defendant, severed Plaintiff's claims against Defendant Paredes, and transferred those claims to this Court for further proceedings.

    Subsequently, Plaintiff filed a motion to supplement, seeking to supplement his arguments concerning Stratton and also seeking to add Officer Curtis as a defendant. (ECF No. 13.) In an order (ECF No. 14) entered on August 15, 2022, the

Court directed Plaintiff to file an amended complaint within 28 days, setting forth all of the Defendants that Plaintiff intended to sue and all of the claims Plaintiff intended to raise. Plaintiff filed another motion to amend (ECF No. 16) on August 22, 2022, which the Court denied as unnecessary (ECF No. 17). On September 1, 2022, Plaintiff filed his amended complaint. (ECF No. 18.) The amended complaint is, therefore, the operative pleading in this matter.

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 15.) This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the amended complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the amended complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne

2

becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain

3

a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan and the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues Chippewa County Prosecutor Robert L. Stratton, III, URF Corrections Officer Matthew Curtis, and MDOC inmate Trinidad Paredes.

Plaintiff alleges that on April 12–13, 2022, Defendant Curtis came into Plaintiff's unit and told Plaintiff that missing documents from his personal property "were found all over the yard" and that "everyone" was aware that Plaintiff was incarcerated for raping a child. (ECF No. 18, PageID.25.) Defendant Curtis told Officer Corey-Spiker (not a defendant) that he "got the green light to continue punishing Plaintiff for assault on staff." (*Id.*) He told Plaintiff to take the matter to trial. (*Id.*)

On April 26, 2022, Plaintiff was walking up the hallway in 2-block of B-wing at ECF when Defendant Paredes came around the corner and smacked Plaintiff "upside the head with a padlock inside a bag." (*Id.*) Plaintiff avers that the medical staff refused to treat his injuries because Plaintiff "fought his attacker and they consider that fighting." (*Id.*) Instead of receiving treatment, Plaintiff was placed in segregation. (*Id.*) Plaintiff contends that during this time, Defendant Paredes began to tell other inmates that Plaintiff was a child rapist. (*Id.*) Defendant Stratton promised to dismiss charges against Plaintiff but "only confirmed that [Defendant] Curtis said that they arranged for [Plaintiff and Paredes] to be placed together for the assault and that he won't be there for long before returning to URF." (*Id.*)

5

Plaintiff avers that Defendants conspired to have him assaulted by Defendant Paredes and to spread "false awareness" of Plaintiff's alleged child rapist case "where a jury declared he is not the person who committed this crime against [the] complainant witness." (*Id.*, PageID.26.) Plaintiff contends that he was labeled as a child rapist beginning in 2004 and that the labeling continues. (*Id.*) Plaintiff indicates that he is in protective custody because he "continue[s] to stand convicted for the alleged sexual offense." (*Id.*) According to Plaintiff, Defendant Stratton decided to initiate charges against him "from the alleged assault upon [Defendant] Curtis on 1-22-21, which he knew to be fake just so they could cut a deal with Paredes for the assault upon Plaintiff." (*Id.*) A review of public dockets indicates that Plaintiff is presently facing two counts of assaulting a prison employee in Chippewa County Circuit Court. *See People v. Washington*, Case No. 2022-0000005594-FH (Chippewa Cnty. Cir. Ct.), https://micourt.courts.michigan.gov/case-search/court/C50 (under Case Number, enter "2022" for "Year," "5594" for "Number," and "FH" for "Type," and select Search) (last visited Sept. 13, 2022).

The Court liberally construes Plaintiff's amended complaint to assert Eighth Amendment claims, as well as a civil conspiracy claim. Plaintiff seeks $75,000.00 in damages from Defendant Paredes "for his role in the attack." (*Id.*, PageID.27.) He also seeks $75,000.00 in damages from Defendants Stratton and Curtis "for their roles in arranging this set up." (*Id.*) Finally, he seeks $175,000.00 from the ECF medical department "for refusing to assist Plaintiff['s] injuries from the assault." (*Id.*)

6

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Civil Conspiracy Under § 1983

Plaintiff appears to suggest that Defendants engaged in a civil conspiracy under § 1983 to have him labeled as a child rapist and ultimately assaulted. (ECF No. 18, PageID.26.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008);

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to him, describe a number of discrete occurrences over a period of time. He appears to rely entirely on highly attenuated inferences from the mere fact that Defendant Paredes was once incarcerated at URF, where Defendant Curtis is employed, and that Defendant Stratton is the prosecutor for Chippewa County, which encompasses URF. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts that support an inference that there was an agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of civil conspiracy under § 1983.

### B. Defendant Paredes

As noted *supra*, Plaintiff has named fellow inmate Trinidad Paredes as a Defendant in this action. To state a § 1983 claim against Defendant Paredes, Plaintiff must show that Defendant Paredes acted under color of state law. *See West*, 487 U.S.

at 48; *Street*, 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Where the defendants are not state officials, their conduct will be deemed to constitute state action only if it meets one of three narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Finally, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally Lugar*, 457 U.S. at 936–39 (discussing three tests).

Plaintiff's amended complaint is wholly devoid of any allegations from which the Court could fairly attribute Defendant Paredes' actions to the state. Nothing in the amended complaint could lead the Court to infer that Defendant Paredes was a state actor even if he were manipulated by Defendants Stratton and Curtis to assault Plaintiff. The Court, therefore, will dismiss Plaintiff's § 1983 claims against Defendant Paredes for failure to allege state action.

### C. Defendant Stratton

Aside from alleging that Defendant Stratton conspired with the other Defendants to harm Plaintiff via Defendant Paredes' assault (a claim that the Court has decided is subject to dismissal), Plaintiff also appears to suggest that Defendant Stratton has violated his rights by falsely charging him with assaulting Defendant Curtis. (*Id.*, PageID.26.) As noted above, Plaintiff is currently facing two charges of assaulting a prison employee in the Chippewa County Circuit Court.

Defendant Stratton, however, as a prosecutor, is entitled to absolute immunity for his actions in prosecuting the criminal action against Plaintiff. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*,

11

424 U.S. 409, 431 (1976). Acts which occur in the course of the prosecutor's role as advocate are entitled to the protection afforded by absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276–78 (1993); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797.

Defendant Stratton's action in charging Plaintiff with two counts of assault upon a prison employee is intimately associated with the judicial phase of the criminal process. Accordingly, Defendant Stratton is entitled to absolute immunity from Plaintiff's claims against him, and such claims will be dismissed.

### D. Eighth Amendment Claims

#### 1. Failure to Protect

The Court has liberally construed Plaintiff's amended complaint as asserting an Eighth Amendment failure to protect claim against Defendant Curtis. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial

risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994)

(holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In his amended complaint, Plaintiff alleges that in April of 2022, Defendant Curtis came to his unit and told Plaintiff that "all the missing documents from his personal property" were found all over the yard, and that "everyone" was aware of why Plaintiff was incarcerated and knew that he had raped a child. (ECF No. 1, PageID.25.) Plaintiff suggests that Defendant Curtis told him that he "got the green light to continue punishing Plaintiff for assault on staff." (*Id.*) Thereafter, Plaintiff was assaulted by Defendant Paredes. (*Id.*) As noted above, Plaintiff suggests that Defendants conspired to have Defendant Paredes assault him and spread "false awareness" of his "alleged child rapis[t] case." (*Id.*, PageID.26.)

Nothing in Plaintiff's amended complaint, however, can lead the Court to infer that Defendant Curtis was deliberately indifferent to any risk of injury to Plaintiff. Plaintiff has not alleged any facts suggesting that Defendant Curtis was responsible for disseminating Plaintiff's documents and spreading the child rapist label around the prison population. Likewise, as discussed *supra*, nothing in the amended complaint can lead to a plausible conclusion that Defendants conspired to have Defendant Paredes assault Plaintiff. The amended complaint is simply devoid of facts suggesting that Defendant Curtis knew that Defendant Paredes intended to assault Plaintiff and deliberately ignored that risk. Overall, nothing in the amended complaint suggests that Defendant Curtis was aware that Plaintiff faced a

14

substantial risk of serious harm and ignored that risk. *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Plaintiff's Eighth Amendment failure to protect claim against Defendant Curtis will, therefore, be dismissed.

### 2. Denial of Medical Care

Plaintiff suggests that his Eighth Amendment rights were violated when he was denied medical care for his injuries after his assault by Defendant Paredes. (ECF No. 18, PageID.25.) The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In

other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff's complaint is devoid of facts from which the Court could infer that any of the named Defendants—particularly, Defendant Curtis—were aware of Plaintiff's injuries from the assault and denied him medical care. Plaintiff, instead, refers to the failure by "medical staff" at ECF to provide medical care. Plaintiff, however, has not named any medical personnel as Defendants in this matter. Moreover, to the extent Plaintiff seeks to sue the entire "medical staff" at ECF, he cannot do so, as "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable" for denying medical care to Plaintiff. *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has

17

consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff, therefore, has failed to set forth a plausible Eighth Amendment claim regarding the denial of medical care, and such claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 21, 2022                       /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge